United States District Court
Southern District of Texas

**ENTERED**

February 02, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| BROADCAST MUSIC, INC., ET AL. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-13-427 |
| | § | |
| HOMESTEAD CLUB VENTURES, LLC | § | |
| d/b/a Rose Country Club; | § | |
| PATRICIA F. KUPRITZ | § | |
| and HYLTON KUPRITZ, | § | |
| INDIVIDUALLY | § | |

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment (Instrument no. 30) of Broadcast Music Inc. et al. (BMI); the Motion seeks judgment against Defendants Homestead Club Ventures, LLC d/b/a Rose Country Club, Patricia F. Kupritz and Hylton Kupritz.

The Parties are intimately familiar with the facts of this case, in fact, many are not in dispute. BMI is a "performing rights society" with the authority to enter into license agreements with, *inter alia*, night clubs to permit the public performance of certain copyrighted music under its licensing control. BMI collects license fees as royalties and distributes them to the copyright owners or assigns after certain deductions. Around October 2010 BMI became aware that unlicensed copyrighted music within its licensing control was being played at the Rose Country Club. BMI began communications with Hylton Kupritz about stopping any infringement and procuring the necessary license. Nevertheless, infringing music continued to be performed at Rose Country Club. In August 2011 BMI sent

the Defendants a cease and desist letter.  On October 10, 2011, an investigator hired by BMI personally witnessed infringing incidents.  No licensing agreement was ever issued to the Defendants.   An apparent significant sticking point was a dispute over the occupancy limitations of the building:  the Defendants were unable to procure an occupancy permit due to unauthorized building improvements and the alternative formula used by BMI rendered the cost too high in their opinion.  Finally, on November 20, 2013, BMI sued the Defendants for copyright infringement.  On July 20, 2015, BMI filed its Motion for Summary Judgment.  Due to procedural problems the Motion was not ripe until January 7, 2016.  The Court now issues this Opinion and Order.

To recover on its claim for infringement BMI must establish five elements.  Broadcast Music, Inc. v. Pine Belt Investment Developers, Inc., 657 F.Supp. 1016 (S.D. Miss. 1987).  The Defendants concede that BMI can establish a *prima facie* case as to all five elements, but they seem to argue that a fact question as to the fifth element precludes summary judgment.  According to the Defendants, the lack of a license to authorize the public performance of copyrighted materials is undermined by the implied authority they have by virtue of the Parties' agreement to agree to a license pending the resolution of the occupancy issue.  This Court disagrees.  It is beyond dispute that an agreement to agree is unenforceable unless it is definite and certain upon all subjects to be embraced in the future in agreement.  Bank of El Paso v. T.O. Stanley Boot Co., Inc., 809 F.2d 279, 285 (Tex. App. -- El Paso, 1991, rev'd, in part, on other grounds, 847 S.W. 2d 218 (Tex. 1992).  Here, the occupancy dispute

2

prevented BMI from calculating the annual license fee to be charged the Defendants.  The fee is a significant subject "to be embraced" in a license, therefore, the Defendants reliance on the Parties' pending negotiations will not excuse their acts of infringement.  As a result, there is no genuine issue of material fact to preclude summary judgment on BMI's claims or copyright infringement.  It is, therefore, **ORDERED** that BMI's Motion for Summary Judgment (Instrument no. 30) is **GRANTED** as to its infringement claims.

The Defendants next argue that they cannot be held vicariously liable for infringement. Hylton Kupritz admits that he had a direct financial interest in and the authority to manage the Rose Country Club.  Those undisputed facts establish the elements of vicariously liability in an infringement action, Warner Bros. Inc. v. Lobster Pot, Inc., 582 F.Supp. 478, 483 (N.D. Ohio 1984), but, in an attempt to avoid litigation, Hylton Kupritz "denies that he authorized or declined to stop the alleged infringement."  The Court will not condone this attempt for at least three reasons.  First, almost one year after the October 2010 contact by BMI about the need for a license the Club was advertising that karokee was available every Thursday, Friday and Saturday.  Second, the claims pursued by BMI are based solely upon five songs witnessed by BMI's investigator on October 20, 2011.  Third, Hylton Kupritz has previously sworn that on some unidentified occasion a live band, albeit at a customer's persistent requests, performed infringing music at the Club.  It is apparent Hylton Kupritz knew that periodic infringement was occurring, but even ignorance of the infringing performances would not "blunt vicariously liability."  Broadcast Music, Inc. v. Meadowlark

Ltd., 754 F.3d 353, 355 (6th Cir. 2014).   This Court concludes that the Defendants are vicariously liable for BMI's five claims.   It is, therefore, **ORDERED** that BMI's Motion for Summary Judgment (Instrument no. 30)  is **GRANTED** as to this issue.

In addition to damages BMI seeks a permanent injunction against the Defendants.  The Defendants argue this claim is moot because Rose Country Club is no longer operating.  They also allege that Hylton Kupritz's "other companies" currently have licenses from BMI.  Rose Country Club's demise is certainly no assurance that the Kupritzes will not infringe in the future and the history of infringement in this case favors an injunction.  Cf. Broadcast Music, Inc. v. Niro's Palace, Inc., 619 F.Supp. 958, 963 (N.D.  Ill. 1985).   Moreover, if the Kupritzes are now compliant and plan to remain so, the injunction should be of little consequence to them.  Accordingly, the Court finds that an injunction is appropriate.  It is, therefore, **ORDERED** that BMI's Motion for Summary Judgment (Instrument no. 30) is **GRANTED** as to this claim.

Finally, the assessment of damages in this case is presently problematic.  Obviously, statutory damages are designed to be punitive in nature; however, in the opinion of this Court, they ought not be a death blow to the Defendants.  The Court **WILL**, therefore, set this matter for a hearing on damages, fees and costs.

**DONE** at Galveston, Texas, this _____2nd_____ day of February, 2016.

_____
John R. Froeschner
United States Magistrate Judge

4